**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WANDA F., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 23-22116 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Wanda F.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying her request for disability insurance benefits under Title II of the Social Security Act. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, the Court affirms the Commissioner's decision.

**I.   BACKGROUND**

In this appeal, the Court must determine whether substantial evidence supports the Administrative Law Judge's ("ALJ") finding that Plaintiff was not disabled and could perform light work at a reduced level. (Pl.'s Moving Br. 21, 24, ECF No. 10.) The Court begins with a brief background of the procedural posture and decision by the ALJ.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A.   Procedural Posture

Plaintiff filed an application for disability insurance benefits in May 2019, alleging a disability onset date of February 9, 2016, and last insured date of December 31, 2016. (AR 17, 241, 264-65, ECF No. 6.[2]) The Social Security Administration (the "Administration") denied the request both initially and on reconsideration. (*Id.* at 139-143, 145-147.) Thereafter, Plaintiff requested a hearing (*id.* at 148-149), and the ALJ held that hearing on September 6, 2022 (*id.* at 33, 234-260). The ALJ issued a written opinion, where she determined that Plaintiff was not disabled and could perform light work at a reduced level. (*Id.* at 14-27.) Plaintiff appealed that decision, and the Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-6.) This appeal followed. (ECF No. 1.) Plaintiff filed her moving brief on July 22, 2024. (ECF No. 10.) The Commissioner opposed (ECF No. 14), and Plaintiff replied (ECF No. 15).

### B.   The ALJ's Decision

In her October 12, 2022 decision, the ALJ concluded that Plaintiff was not disabled at any time between February 9, 2016 and December 31, 2016. (AR 27.) The ALJ set forth the five-step process for determining whether an individual is disabled. (*Id.* at 18-19 (citing 20 C.F.R. § 404.1520(a)).) At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity" during the period from her alleged onset date through the date last insured. (*Id.* at 20 (citing 20 C.F.R. § 404.1571).) At step two, the ALJ found that Plaintiff suffered from several severe impairments, including lumbago, obesity, and hypertension, but that her depressive disorder was non-severe. (*Id.* (citing 20 C.F.R. § 404.1520(c)).) At step three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments" that qualified under the

---

[2] The Administrative Record ("AR") is found at ECF No. 6. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

2

Administration's listed impairments. (*Id.* at 21-22 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) The ALJ then found that Plaintiff possessed the residual functional capacity ("RFC"):

> to perform light work as defined in 20 C[.]F[.]R[.] [§] 404.1567(b) except frequent climbing of ramps and/or stairs; never climb ladders, ropes or scaffolds; frequent stooping, kneeling, crouching and crawling; frequent reaching all directions; and limited to simple, routine work.

(AR 22.)

In determining that Plaintiff had the RFC "to perform light work" subject to certain limitations, the ALJ examined Plaintiff's medical records from Dr. Rakesh Passi ("Dr. Passi") from 2015 and 2016, Plaintiff's subjective complaints and testimony, and the state agency consultants' shared opinions. (*Id.* 19-27.) Although the state agency psychological consultants opined that Plaintiff's depressive disorder was severe, the ALJ determined this opinion was "not persuasive" because their opinion was "internally inconsistent," and the record otherwise failed to demonstrate that Plaintiff had disabling impairments through the date last insured. (*Id.* at 21.)

At step four, the ALJ concluded that Plaintiff was "unable to perform any past relevant work." (*Id.* at 25 (citing 20 C.F.R. § 404.1565).) At step five, the ALJ concluded that "there were jobs that existed in significant numbers in the national economy" that Plaintiff could have performed. (*Id.* at 26-27 (citing 20 C.F.R. §§ 404.1569, 404.1569(a)).)

This appeal turns on the ALJ's assessment of the severity of Plaintiff's mental impairments and determination of Plaintiff's RFC. (*See generally* Pl.'s Moving Br.) Specifically, Plaintiff argues that "[t]he [ALJ's] finding that [Plaintiff's] depressive disorder is non severe is incorrect," and "[t]here is not substantial evidence that plaintiff could perform light work, even at the reduced level found by the ALJ." (*Id.* at 12, 21.) The Court must therefore resolve whether the ALJ's decision is supported by substantial evidence and adequately explained.

3

## II.     LEGAL STANDARD

### A.     Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether

the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

      **B.**      **Establishing Eligibility for Disability Insurance Benefits**

To be eligible for disability insurance benefits, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). For the first step, claimants must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, claimants must establish that they suffer from a "severe . . . physical or impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that claimants provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If claimants demonstrate that they suffer from a listed impairment or that their severe impairment is

5

equal to a listed impairment, they are presumed to be disabled and entitled to disability insurance benefits. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether claimants' RFC permit them to resume previous employment. *Id.* § 404.1520(e). If claimants' RFC permits previous employment, claimants are not "disabled" and thus not entitled to disability insurance benefits. *Id.* § 404.1520(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that claimants can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, claimants will receive disability insurance benefits. *Id.*

**III.     DISCUSSION**

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. (Pl.'s Moving Br. 21, 24.) Specifically, Plaintiff contends that the ALJ: (1) erred in finding that Plaintiff's depressive disorder was a non-severe impairment; (2) failed to consider evidence related to Plaintiff's musculoskeletal impairments, cardiac impairments, obesity, and subjective complaints of pain when evaluating Plaintiff's RFC; and (3) erred in interpreting and relying on the testimony of the vocational expert. (*See generally* Pl.'s Moving Br.) The Court finds none of these arguments availing and addresses each alleged error in turn.

**A.     The ALJ Did Not Err in Finding Plaintiff's Depressive Disorder Was Not Severe.**

Plaintiff first argues that the ALJ erred in her determination that Plaintiff's depression was "not severe" at step two of the sequential analysis. (Pl.'s Moving Br. 12-14.)

According to the Commissioner's regulations, an impairment or combination of impairments is "not severe" if it does not "significantly limit [the claimant's] physical or mental

ability to do basic work activities." 20 C.F.R. § 404.1522(a); *see Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003). Basic work activities are defined as "abilities and aptitudes necessary to do most jobs," including, *inter alia*, "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" and "capacities for seeing, hearing, and speaking." 20 C.F.R. §§ 140.1522(b)(1), 140.1522(b)(2).

When evaluating the severity of a mental impairment, the ALJ must consider the four areas of mental functioning described in the disability regulations for assessing mental disorders and in the Listing of Impairments, known as the "Paragraph B" criteria. 20 C.F.R. § 404.1520a(c)(4). The first functional area considered by the ALJ is "understanding, remembering, or applying information." 20 C.F.R. § 404.1520a(c)(4). Here, the ALJ found that Plaintiff had a mild limitation. (AR 20-21.) The ALJ reasoned that while Plaintiff testified to having memory issues, medical records from Dr. Passi described her short-term memory as intact in November 2015. (*Id.* at 20-21; 521-553.) Second, the ALJ considered Plaintiff's ability to interact with others and found that she had no limitation, as there was no evidence in the record to suggest otherwise. (*Id.* at 21.) The third functional area considered by the ALJ is "concentrating, persisting, or maintaining pace." 20 C.F.R. § 404.1520a(c)(4). The ALJ found that Plaintiff had a mild limitation in this area, reasoning that while Plaintiff testified to having issues with concentration, Dr. Passi's records from 2015 stated that Plaintiff's cognitive abilities, including her concentration, were intact. (AR 21.) The ALJ then considered the fourth functional area, Plaintiff's ability to adapt and manage herself, and concluded she had no limitations, as the record was devoid of any evidence suggesting limitations in this domain. (*Id.* at 21.) Because the ALJ concluded Plaintiff's mental limitations did not cause "at least one extreme limitation or two marked limitations," the Paragraph B criteria were not satisfied. (*Id.* at 21.) The ALJ further concluded that Plaintiff's depressive disorder did

not cause more than a minimal limitation in her ability to do basic work activities and was "not severe" because no record evidence or clinical notes detailed how this condition caused any work-related limitations. (*Id.* at 20); *see* 20 C.F.R. § 404.1520a(d)(1) ("If [the ALJ] rate[s] the degrees of [a claimant's] limitation as "none" or "mild," [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities.").

Plaintiff argues that the ALJ erred in concluding her depressive disorder was not severe because she failed to consider Plaintiff's diagnosis of sleep apnea, which "caused [P]laintiff to suffer from excessive day time sleepiness, day time napping, poor concentration, fatigue, elevated blood pressure and snoring." (Pl.'s Moving Br. 12.) The Court is not persuaded. As a preliminary point, the evidence Plaintiff cites to is a sleep study performed in June 2018, which post-dates the limited time period in 2016 during which Plaintiff must establish that she became disabled. (AR 421-427); *see Hancuff v. Colvin*, No. 13-119, 2014 WL 1056672, at *2 n.2 (W.D. Pa. Mar. 19, 2014) ("Plaintiff was insured for [disability insurance benefits] purposes through March 31, 2008 . . . . Thus, she must establish that she became disabled on or before that date to be eligible for [disability insurance benefits].")

Nonetheless, here, the ALJ considered Plaintiff's complaints of poor concentration and memory when evaluating Plaintiff's depressive disorder. (AR 21.) The ALJ concluded that Plaintiff's depressive disorder was not severe because while Plaintiff complained of poor concentration and memory, medical records from Dr. Passi during the relevant period indicated Plaintiff had an "intact" short-term memory, attention, and concentration. (*Id.* at 20.) Moreover, Plaintiff herself denied having any psychiatric conditions, including depression, "on almost a dozen different occasions" prior to December 2016. (*See id.* at 351-383, 531-553.) The ALJ further

8

determined while the state agency psychological consultants opined that Plaintiff's depressive disorder was severe, this opinion was "not persuasive" because the opinion also stated that Plaintiff lacked sufficient evidence to demonstrate this was a medically determinable impairment. (*Id.* at 21.)

Here, the medical evidence, taken as a whole, supports the ALJ's finding that evidence of Plaintiff's depressive disorder was not severe. In reaching her conclusion, the ALJ considered all relevant medical records, including Plaintiff's reported symptoms and testimony during the relevant period, and based her judgment on substantial medical evidence. Accordingly, the ALJ did not err in determining Plaintiff's depressive disorder had no more than a minimal effect on her ability to work.

**B.     The ALJ's RFC Determination Is Supported by Substantial Evidence.**

The Court next addresses Plaintiff's challenge to the ALJ's RFC determination. Plaintiff argues that the ALJ's finding that Plaintiff was limited to "light work . . . at [a] reduced level" is not "supported by substantial evidence" and that the ALJ "failed to consider all of the medical records and specific findings" regarding Plaintiff's impairments. (Pl.'s Moving Br. 14-22.) Plaintiff specifically points to evidence regarding her orthopedic impairments, obesity, cardiac impairments, and pain, as findings the ALJ failed to consider. (*Id.*) Had the ALJ so considered, Plaintiff argues, the ALJ would have concluded Plaintiff was limited to sedentary work and unable to perform a significant number of other jobs in the national economy, thereby entitling her to disability insurance benefits. (*Id.* at 19, 22.) The Court disagrees and finds that the ALJ's RFC determination is supported by substantial evidence.

The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546(c); *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)

("The ALJ—not treating or examining physicians or [s]tate agency consultants—must make the ultimate disability and RFC determinations."). "In making a[n] [RFC] determination, the ALJ must consider all evidence before [her]," and, although the ALJ may weigh the credibility of the evidence, she must "give some indication of the evidence which [s]he rejects and h[er] reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). The indication of the ALJ's reasoning, however, may be "implicit" in the decision. *Diciano v. Comm'r of Soc. Sec.*, No. 18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) (finding that, although the RFC did not specifically mention "the functions of sitting, standing, walking, lifting, carrying, or pushing . . . that does not mean the ALJ did not 'consider' those functions.").

"Plaintiff bears the burden of proof at the point of RFC determination[.]" *Diaz v. Astrue*, No. 07-3220, 2008 WL 4104564, at *6 (D.N.J. Sept. 3, 2008) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). It is not the Commissioner's burden to disprove a claimant's disability. *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000). Therefore, a plaintiff must "connect the dots between an omitted medically determinable impairment (or condition) and resulting limitations on her functional capacity, consistent with her burden." *Vanessa T-H. v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *6 (D.N.J. Apr. 16, 2024) (citing *Louis v. Comm'r of Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020)).

Here, the Court finds that the ALJ's determination of the RFC is supported by substantial evidence in the record, as a fair reading of the decision shows that the ALJ considered all of Plaintiff's impairments. An ALJ need not "perform a 'function-by-function' analysis . . . so long as the ALJ's RFC determination is supported by substantial evidence in the record." *Glass v. Comm'r of Soc. Sec.*, No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019). Here, the ALJ did consider all of Plaintiff's functions, including her orthopedic impairments,

musculoskeletal issues, obesity, cardiac impairments, and subjective complaints of pain. (AR 22-27.)

Beginning with Plaintiff's musculoskeletal impairments, the ALJ considered Plaintiff's testimony of leg pain, back pain, ambulation difficulties, and herniated discs, but concluded this testimony was not supported by the record, as medical records prior to December 2016 showed Plaintiff had normal ambulation and coordination without use of an assistive device, no range of motion limitations in lower extremities, and no record of orthopedic treatment or physical therapy. (*Id.* at 23-24.) Next, the ALJ considered records regarding Plaintiff's cardiovascular impairments and concluded that the "majority of her diagnostic evidence showed that [Plaintiff's] heart was normal." (*Id.* at 25.) The ALJ reasoned that while Plaintiff had high blood pressure and benign hypertension, she primarily had normal cardiovascular exams, including a transthoracic echocardiogram performed in 2015, which found Plaintiff had normal left ventricular perfusion and systolic function. (*Id.* at 23-25.)

Turning to Plaintiff's obesity, Plaintiff makes a cursory statement that the ALJ did not "assess the impact" of this impairment on her ability to work, but fails to otherwise point the Court to "any evidence in the record indicating that obesity impacted her impairments such that the medical equivalency analysis would change or that she required additional RFC limitations due to her obesity." (Pl.'s Moving Br. 15); *Alejandra D. v. Comm'r of Soc. Sec.*, No. 22-175, 2023 WL 2609134, at *10 (D.N.J. Mar. 22, 2023) (concluding that the ALJ meaningfully considered plaintiff's obesity where plaintiff failed to explain how further analysis of plaintiff's obesity would necessitate a different finding). Without further direction from Plaintiff, the Court finds that the ALJ meaningfully considered Plaintiff's obesity at multiple points during her assessment. At step two of the sequential analysis, the ALJ concluded Plaintiff's obesity was "severe." (AR 20.) Later,

when evaluating Plaintiff's RFC, the ALJ found there was "no evidence in the record" to suggest Plaintiff's obesity "worsened or exacerbated her other impairments." (*Id.* at 25.)

Finally, Plaintiff alleges that the ALJ made her findings regarding Plaintiff's complaints of pain "based on . . . mere speculation" (Pl.'s Moving Br. 18), but again fails to develop this argument and does not "affirmatively point[] to specific evidence" the ALJ failed to consider. *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016). Plaintiff further alleges that the ALJ "fail[ed] . . . to apply the correct legal standard concerning pain," but does not elaborate on this assertion or explain how the ALJ supposedly misapplied legal standards. (*Id.* at 17.) The Court declines to parse through the record to attempt to determine Plaintiff's position or speculate as to the evidence the ALJ purportedly failed to consider. *Atkins ex rel. Atkins v. Comm'r*, 810 F. App'x 122, 129 (3d Cir. 2020) ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position.") Nonetheless, the Court notes the ALJ did consider Plaintiff's subjective complaints of pain, including Plaintiff's reported lower back pain and related spasms, but ultimately concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record. (AR 24.)

Taken in sum, the Court finds the ALJ's RFC assessment that Plaintiff could perform light work at a reduced level is supported by substantial evidence. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008) ("Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999))). The ALJ implicitly and explicitly considered Plaintiff's functions in making the RFC determination. *See Deraine A. v. Kijakazi*, No. 23-3157, 2024 WL 3665811, at *8 (D.N.J. Aug. 5, 2024). To the extent

Plaintiff alleges that the ALJ failed to cite specific medical evidence or testimony in reaching her determination, it is well established that an ALJ "need not mention every piece of evidence in the record." *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 (3d Cir. 2009); *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001) (explaining that an ALJ is not required to "make reference to every relevant treatment note" where the claimant has voluminous medical records).

### C. The ALJ Did Not Commit Reversible Error in Relying on the Vocational Expert's Response.

Last, Plaintiff argues that the ALJ "committed reversible error in relying on the [Vocational Expert's] response to a hypothetical question which did not include all of the functional limitations supported by the record, *i.e.*, sleep apnea and vascular headaches." (Pl.'s Moving Br. 24.) This argument is similarly unavailing.

An ALJ is not required to include every impairment alleged by a claimant when posing a hypothetical to the vocational expert. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 206 (3d Cir. 2008). Rather, an ALJ need only include all of a claimant's impairments and limitations that are supported by the record. *Id.* Here, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity of light work with enumerated postural, manipulative, and mental limitations. (AR 26-27, 62-68.) The vocational expert testified that an individual with these restrictions would be able to perform the requirements of jobs such as collar/operator, office helper, and mail clerk. (*Id.*)

In arguing that the ALJ failed to include Plaintiff's impairments of sleep apnea and vascular headaches when posing the hypothetical to the vocational expert, Plaintiff cites only to an echocardiogram performed in April 2015. (Pl.'s Moving Br. 24 (citing AR 383).) This echocardiogram, however, presents no evidence of Plaintiff's sleep apnea or vascular headaches.

(*See* AR 383.) Instead, it assessed Plaintiff's cardiovascular condition and determined she had mild impairments, but normal ejection fraction and left ventricle systolic function. (AR 383.) Plaintiff fails to cite to any other evidence that demonstrates a credible impairment that the ALJ failed to include when posing the hypothetical to the vocational expert. The Court thus finds that the ALJ's hypothetical posed to the vocational expert sufficiently accounts for all of Plaintiff's impairments and limitations supported by the record.[3]

### IV.  CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's final decision. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff also argues that she would be disabled pursuant to Medical-Vocational Guideline ("Grid Rule") 201.12 because the evidence supports an RFC for sedentary work. (Pl.'s Moving Br. 22.) While it is true that an individual of Plaintiff's age, education and work experience with an RFC for sedentary work would be disabled as a matter of law under Grid Rule 201.12, the Court is satisfied that the ALJ's RFC finding that Plaintiff can perform light work at a reduced level is supported by substantial evidence. Accordingly, Grid Rule 201.12 is inapplicable.